IN THE STATE OF NORTH CAROLINA          GENERAL COURT OF JUSTICE
MOORE COUNTY                            SUPERIOR COURT DIVISION

FILED
2021 MAY 10 A 10: 01
MOORE CO., C.S.C.
BY ____

Mystic Retreat Med Spa & )
Weight Loss Center, PLLC )
                         )
and                      )
                         )
Misty Sinclair, M.D.,    )
                         )
    Plaintiffs, )
                         )
    vs.        )    Case No.
                         )
Ascentium Capital LLC,   )    COMPLAINT
                         )
Zeltiq Aesthetics LLC,   )
                         )
and,                     )
                         )    JURY TRIAL DEMANDED
Allergan USA, Inc.       )
                         )
    Defendants. )

COMES NOW Plaintiff Mystic Retreat Med Spa & Weight Loss Center, PLLC and Dr. Misty Sinclair ("Plaintiffs"), by and through their undersigned attorney, and states as follows:

1. Plaintiff Mystic Retreat Med Spa & Weight Loss Center, PLLC ("Mystic") is a North Carolina Professional Limited Liability Company with principal offices in Moore County, North Carolina.

2. Plaintiff Dr. Misty Sinclair, M.D., is a leading neurologist and is claimed to be a guarantor under a certain obligation alleged to be owed by Plaintiff Mystic to Defendant Ascentium Capital LLC.

3. Upon information, investigation and belief, Defendant Ascentium Capital LLC (hereinafter "Ascentium") is a Delaware limited liability company with a registered

1

office at 160 Mine Lake Ct Ste 200, Raleigh, NC 27615-6417, that has conducted substantial business operations in Moore County, North Carolina.

4. Upon information, investigation and belief Defendant Zeltiq Aesthetics LLC ("Zeltiq") is a Delaware limited liability company that conducted substantial business operations, including the unlawful activities complained of herein, in Moore County, North Carolina.

5. Upon information, investigation and belief, Defendant Allergan USA (hereinafter "Allergan") is a Delaware corporation that recently acquired Zeltiq.

6. Venue is proper in this Court and in this Judicial District.

## FACTS COMMON TO ALL COUNTS

7. Plaintiffs operate a medical business that provides services including aesthetic treatment services.

8. Defendants Zeltiq and Acentium work together to sell and finance the purchase of medical devices, and associated services using technology developed by Zeltiq which they represented, at all relevant times, is a medical device that uses very cold temperatures to injure fat cells inside the human body and thus causes said fat cells to die and be absorbed and which they claimed produced improvements to the appearance of patients treated by the device.

9. Defendants Zeltiq and Ascentium marketed the technology and associated financing and after-sale services under the trademarked name Coolsculpting.

10. Upon information, investigation and belief, Defendants Zeltiq and Ascentium agreed to cooperatively sell the Coolsculpting products and services and financing.

2

11. Upon information, investigation and belief, Defendants Zeltiq and Ascentium agreed that Ascentium would share in the proceeds of sales of Coolsculpting equipment and associated services (hereinafter "Kickbacks").

12. As part of their agreements, Ascentium used Coolsculpting logos and trademarks in its financing documents and presentations to potential Coolsculpting equipment and technology purchasers.

13. Upon information, investigation and belief, the Kickbacks were designed to induce Ascentium to offer below market or zero-interest financing to purchasers of Coolsculpting equipment and associated services, and also provided funding for sales commissions to Ascentium personnel for originating loans to finance the purchase of Coolsculpting equipment and associated services.

14. Plaintiff Mystic was induced by agents of Defendants Zeltiq and Ascentium to buy a Coolsculpting machine in reliance on the material, fraudulent misrepresentation that the Coolsculpting technology provided exclusively to Mystic would be the most advanced technology available in the region.

15. Plaintiff Mystic was induced by agent Jason Wise of Defendants Zeltiq and Ascentium to buy a Coolsculpting machine in reliance on the material, fraudulent misrepresentation that Coolsculpting technology is highly profitable to entities who finance the machines and that Ascentium had never seen a default on a loan for a Coolsculpting machine.

16. Plaintiff Mystic was induced by agent Jason Wise of Defendants Zeltiq and Ascentium to buy a Coolsculpting machine in reliance on the fraudulent misrepresentation that Coolsculpting technology is highly profitable to entities who finance the machines and that Ascentium routinely received early payoffs for loans on Coolsculpting equipment.

3

17. Plaintiff Mystic was induced by agents of Defendants Zeltiq and Ascentium to buy a Coolsculpting machine in reliance on the fraudulent misrepresentation that Coolsculpting technology was not associated with any adverse medical outcomes, while both Ascentium and Zeltiq were well aware that many patients have developed serious complications after treatment and some later required cosmetic surgery to address the damage caused by the freezing of their appendages.

18. Upon information and belief, contrary to their representations to Plaintiffs, Defendants Zeltiq and Ascentium knew that Coolsculpting equipment is, at best, barely profitable for providers such as Mystic while the structure of the Zeltiq purchase with Ascentium financing transactions are designed to ensure profits for Defendants Zeltiq and Ascentium regardless of the harm they cause to Plaintiffs or the patients on whom Coolsculpting technology is used.

19. Plaintiff Mystic was induced by agents of Defendants Zeltiq and Ascentium to buy a Coolsculpting machine and associated services in reliance on the material, fraudulent misrepresentation that Coolsculpting technology provided to Mystic would be supported by a continued national advertising campaign and that the unit would be in virtually constant use.

20. During follow-up conversations after the sale, Zeltiq personnel conceded that the same equipment Defendants had sold to Mystic as unique in Mystic's territory was being sold to numerous competitors within the local market, and that Defendant Allergan's purchase of Zeltiq had required the sale of many more machines per territory than previously represented.

21. During follow-up conversations after the sale, Zeltiq personnel conceded that Defendant Allergan's purchase of Zeltiq had resulted in a reduction in the advertising campaigns used to promote the services of purchasers such as Mystic because Allergan had many liabilities related to other medical products in its portfolio and needed cash to satisfy those needs.

22. Upon information, investigation and belief, Defendant Zeltiq operated unlawfully in the State of North Carolina by having no registered agent at the time its salespeople were actively engaged in substantial business in this State.

23. The Coolsculpting equipment and associated services never performed as Defendants Zeltiq and Ascentium promised at the time of the sale.

24. The business models and projections Defendants Zeltiq and Ascentium promised bore no semblance to the reality of the actual demand for Coolsculpting services – Zeltiq and Ascentium knew these models and projections were inaccurate.

25. The serious side-effects and long painful treatments Defendants Zeltiq and Ascentium failed to disclose to Plaintiffs severely reduced the demand for Coolsculpting services.

26. After years of paying for the Coolsculpting equipment, Plaintiff Mystic refused to make additional payments and requested that Defendants take back their equipment and terminate the business relationship.

27. Defendant Ascentium accepted possession of the Coolsculpting equipment, and a person holding themselves out as an agent of Ascentium was given access to Plaintiff's facility to recover the same.

28. Defendant Ascentium never sent notice of sale by United States Mail as required by Article 9 of the California UCC, and in breach of the relevant loan documents.

29. Defendant Ascentium never provided an explanation of the disposition of the Coolsculpting equipment it took possession of.

30. Defendant Ascentium has represented through counsel that, it caused the Coolsculpting equipment to be sold the for less than 5% of the purchase price Plaintiffs paid through a third-party contractor.

31. Defendants have sent misleading communications to Mystic including communications that have knowingly misrepresented that there is a balance due under the relevant equipment financing agreements.

## COUNT I – UNFAIR AND DECEPTIVE TRADE PRACTICES G.S. § 75-1 *et seq.*
## DEFENDANT ASCENTIUM

32. The Plaintiff hereby incorporates by reference paragraphs 1 through 31 inclusive as though fully set forth in this Paragraph.

33. Defendant Ascentium engaged in unfair or deceptive practices during the sale and financing of Mystic's purchase of Coolsculpting equipment and associated services

34. Defendant Ascentium conspired with the other Defendants to engage in unfair or deceptive practices during the sale and financing of Mystic's purchase of Coolsculpting equipment and associated services.

35. Ascentium's unfair and deceptive practices were conducted in or affecting commerce.

36. Ascentium's actions as described herein proximately caused damages Plaintiffs in an amount to be proven at trial but in excess of $25,000.

## COUNT II – UNFAIR AND DECEPTIVE TRADE PRACTICES G.S. § 75-1 *et seq.*

## DEFENDANTS ZELTIQ AND ALLERGAN

37. The Plaintiff hereby incorporates by reference paragraphs 1 through 31 inclusive as though fully set forth in this Paragraph.

38. Defendant Zeltiq conspired with the other Defendants to engage in unfair or deceptive practices during the sale and financing of Mystic's purchase of Coolsculpting equipment and associated services.

39. Zeltiq's unfair and deceptive practices were conducted in or affecting commerce.

40. Zeltiq's actions as described herein proximately caused damages Plaintiffs in an amount to be proven at trial but in excess of $25,000.

41. Upon information, investigation, and good-faith belief, Defendant Allergan is liable for the damages caused by Defendant Zeltiq as a successor in interest.

42. Plaintiffs are entitled to treble damages or punitive damages, and for a reasonable attorney's fee award and costs of this action all as provided by G.S. §§ 75-16 and 75-16.1

## COUNT III – VIOLATIONS OF UCC – DEFENDANT ASCENTIUM

43. The Plaintiff hereby incorporates by reference paragraphs 1 through 31 inclusive as though fully set forth in this Paragraph.

44. Defendant Ascentium's conduct as described in this Complaint was a breach of Ascentium's duty of good faith and fair dealing.

45. Defendant Ascentium's secret side agreements with Defendant Zeltiq to earn cash and other consideration from the provision of financing extended to Plaintiff Mystic was a breach of Ascentium's duty of good faith and fair dealing.

46. Defendant Ascentium recently declared Mystic to be in default of the terms of its finance of the Coolsculpting equipment and technology.

47. Defendant Ascentium's financing agreement mandated that all notices be in writing and "deposited with the US Postal Service, first-class postage prepaid…"

48. No notices were sent to Plaintiffs by United States mail after Defendant Ascentium took possession of the Coolsculpting equipment.

49. Defendant Ascentium breached the express terms of the agreements it drafted for the financing of Coolsculpting equipment and services.

50. Defendant Ascentium's conduct in originating the financing while concealing known dangers of Coolsclupting technology was not commercially reasonable.

51. Defendant Ascentium's secret side agreements with Defendant Zeltiq to earn cash and other consideration from the provision of financing extended to Plaintiff Mystic was a breach of Ascentium's duty of good faith and fair dealing.

52. Defendant Ascentium's actions amounted to a strict foreclosure under applicable law.

53. Defendant Ascentium's actions in disposing of the Coolsculpting equipment were not commercially reasonable.

54. Defendant Ascentium's actions in contravention of Article 9 of the UCC proximately damaged Plaintiffs insofar as Defendant Ascentium seeks a deficiency payment and did not realize a surplus for Plaintiff Mystic through said unreasonable disposition of the Coolsculpting equipment.

55. Defendant Ascentium should take nothing, and upon information, investigation and belief owes Plaintiff an amount to be proven at trial for the surplus it has wrongfully withheld.

8

Case 1:21-cv-00515-TDS-JLW   Document 7   Filed 06/24/21   Page 8 of 10

## COUNT IV – BREACH OF CONTRACT - DEFENDANT ASCENTIUM

56. The Plaintiff hereby incorporates by reference paragraphs 1 through 31 inclusive as though fully set forth in this Paragraph.

57. Defendants' Coolsculpting financing agreement mandated that all notices be in writing and "deposited with the US Postal Service, first-class postage prepaid…"

58. No notices were sent to Plaintiffs by United States mail after Defendant Ascentium took possession of the Coolsculpting equipment.

59. Defendant Ascentium's agent failed to dispose of the Coolsculpting equipment in a commercially reasonable manner.

60. Defendant Ascentium's failure to act in a commercially reasonable manner proximately damaged Plaintiffs in an amount to be proven at trial in excess of $25,000.

61. Defendant Ascentium's breach of the Coolsculpting financing agreement excuses further performance by Plaintiffs of any further obligations under said agreement.

## COUNT V - CONSTRUCTIVE TRUST – ALL DEFENDANTS

62. The Plaintiff hereby incorporates by reference paragraphs 1 through 31 inclusive as though fully set forth in this Paragraph.

63. Defendants Ascentium and Zeltiq fraudulently obtained significant sums of money from Plaintiff Mystic as part of the sale and financing of Coolsculpting equipment, in an amount to be proven at trial, but in excess of $25,000.

64. It would be inequitable under the circumstances for Defendants to retain the proceeds of the fraudulent Coolsculpting sales and financing transactions.

65. It would be inequitable under the circumstances for Defendants to retain profits earned with the use of the proceeds of the fraudulent Coolsculpting sales and financing transactions.

WHEREFORE, Plaintiff prays this Honorable Court:

a. Enter judgment for Plaintiff against one or more of the Defendants on each Count of this Complaint;
b. Declare Defendants' trade practices to be unfair and deceptive practices under G.S. § 75-1 *et seq.*;
c. Award Plaintiff additional monetary damages in treble the amount of the actual damages proven at trial or the amount of the punitive damages awarded by the jury at trial at Plaintiff's option, plus the amount of the costs, and expenses of this action due Plaintiff; and a reasonable attorney's fee as provided by G.S. § 75-1 *et seq.* and § 75-16.1, said damages being in excess of $25,000.
d. Declare that any and all obligations secured by the Coolsculpting equipment returned to Defendants are fully satisfied and Order Defendants to cancel any financing statements filed in the Office of the North Carolina Secretary of State.
e. Order that Plaintiff receive the amount of surplus that a reasonable sale of the Coolsculpting equipment would have yielded had there been a commercially reasonable disposition of said equipment.
f. Declare a constructive trust in favor of Plaintiff over any proceeds of the sale and financing of Coolsculpting equipment to Plaintiffs, and equitably trace the funds and their increase into the several Defendants' assets wherever they may be found.
g. Order that Plaintiff receive any further relief that the Court deems appropriate under the circumstances.

Respectfully Submitted,

Jonathan Blitz
Attorney for Plaintiff
North Carolina Bar No. 33071
1212 North Mineral Springs Road
Durham, NC 27703
Tel. (919) 323-2777
Email: blitzlaw@gmail.com