IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MYSTIC RETREAT MED SPA & WEIGHT LOSS CENTER, and MISTY SINCLAIR, M.D., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:21-cv-00515 |
| ASCENTIUM CAPITAL LLC, ZELTIQ AESTHETICS LLC, and ALLERGAN USA, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This is an action involving a contract for weight loss equipment. Defendants Zeltiq Aesthetics, Inc. ("Zeltiq") and Allergan USA, Inc. ("Allergan") (collectively the "Allergan Defendants") move for leave to file an amended answer (Doc. 28) and to stay proceedings and compel arbitration (Doc. 29). Defendant Ascentium Capital, LLC ("Ascentium") consents to the Allergan Defendants' motion for leave to file an amended answer. (Doc. 28-3.) Plaintiffs Mystic Retreat Med Spa & Weight Loss Center, PLLC, ("Mystic") and Misty Sinclair, M.D., oppose both motions.[1] (Docs. 34, 35.) The Allergan Defendants filed a reply.

---

[1] Ascentium also filed a response, clarifying that it did not agree to arbitration with Plaintiffs. (Doc. 36.) Ascentium requests, should the court grant the Allergan Defendants' motion to stay proceedings and compel arbitration, that the "Ascentium/Plaintiffs Claims should not be stayed, should be severed from the claims between Plaintiffs and the

(Doc. 37.)  For the reasons set forth below, the Allergan Defendants' motion to stay proceedings and compel arbitration (Doc. 29) will be denied without prejudice, and the motion for leave to file an amended answer (Doc. 28) will be granted.

I.   BACKGROUND

The basic facts, as relevant to the motions before the court, are as follows:

Zeltiq and Ascentium worked together to sell and finance the purchase of medical devices designed to assist with weight loss. (Doc. 7 ¶ 8.)  On June 22, 2016, Sinclair and her business partner, Marcia Ballard, met with Wes Lev, Zeltiq's sales manager, to execute a Master Sales Agreement ("MSA") with Zeltiq[2] for Mystic's purchase of CoolSculpting System equipment and services.  (Doc. 29-3.)  Lev presented Sinclair and Ballard with a single-page MSA Sales Order.  (Doc. 34-1 ¶ 13, Doc. 34-2 ¶ 12.)  The bottom of the Sales Order states:

> The agreement between Customer and ZELTIQ Aesthetics regarding the products described above (the 'Master Sales Agreement') includes this Sales Order and the attachments (A-C) hereto which are incorporated herein in their entirety by this reference.

(Doc. 29-3.)  However, Lev did not present Sinclair and Ballard with any of these MSA attachments on June 22.  (See Doc. 34-1

---

Allergan Defendants, and should be allowed to proceed forward in this Court without delay."  (Id. at 5.)

[2] Allergan USA, Inc. acquired Zeltiq in 2017.  (Doc. 16 ¶ 5.)

2

¶¶ 13-16; Doc. 34-2 ¶¶ 12-13.)  At the in-person meeting, Plaintiffs made two handwritten changes to the Sales Order; first to change the address to the new Mystic facility in Carthage, North Carolina; and the second to note $1,000 in marketing development funds that Zeltiq was providing.  (Doc. 34-1 ¶ 14, Doc. 29-3.) Lev and Sinclair both initialed and dated the two changes, and Sinclair signed the MSA Sales Order on behalf of Mystic.  (Doc. 29-3.)  The next day, on June 23, Lev sent Sinclair an email with a copy of the executed single-page MSA Sales Order attached.  (Doc. 34-1 ¶ 18; Doc. 34-2 ¶ 16.)

In support of their motion to compel arbitration, the Allergan Defendants have filed a copy of an email they contend Lev sent to Sinclair and Ballard at 8:14 p.m. on June 19, 2016, three days before their in-person meeting, which attached a blank copy of the MSA Sales Order with Attachments A through C.  (Doc. 29-2.) However, these Defendants have not filed an affidavit to authenticate this email.  Plaintiffs also claim they did not see Lev's June 23, 2016 email attaching the signed MSA Sales Order until the pendency of this litigation.  (Doc. 34-1 ¶ 18; Doc. 34-2 ¶ 16.)  Plaintiffs state under oath that the first time they saw the MSA attachments was during the pendency of this litigation. (See Doc. 34-1 ¶ 16; Doc. 34-2 ¶¶ 14-15.)

Attachment A purports to contain, among other terms, the following:

3

> **APPLICABLE LAW; DISPUTE RESOLUTION.** The laws of the State of California govern this agreement without regard to conflict of laws principles or any other principles that would result in the application of a different body of law. . . . Any controversy or claim arising out of or relating to this Agreement, or its breach, shall be subject to non-binding mediation prior to binding arbitration in Alameda County, California under the then-current Commercial Arbitration Rules of the American Arbitration Association by one arbitrator appointed in accordance with such Rules. . . .

(Doc. 29-1 at 5.)

As demand for the CoolSculpting System declined, Plaintiffs refused to make additional payments to Defendants and sought to return the device and terminate the business relationship. (Doc. 7 ¶¶ 25-26.) Plaintiffs allege Ascentium took possession of the device but wrongfully demanded the balance due under the equipment financing agreements. (Id. ¶¶ 27, 31.)

On May 10, 2021, Plaintiffs filed their complaint against Defendants in The General Court of Justice, Superior Court Division, in Moore County, North Carolina. (Doc. 7.) Ascentium's counsel accepted service of the complaint on June 7, 2021 (Doc. 1-1 at 15), and on June 23 the Allergan Defendants, with Ascentium's consent, timely filed a notice of removal in this court. (Doc. 1 ¶ 8.) On January 3, 2022, the Allergan Defendants moved for leave to file an amended answer to add an arbitration defense and to change the name of "Zeltiq Aesthetics, LLC" to "Zeltiq Aesthetics, Inc." (Doc. 28), and they moved to stay proceedings and to compel arbitration (Doc. 29).

## II. ANALYSIS

### A. Legal Standard

When presented with a question as to whether parties are required to arbitrate a dispute, the trial court is limited to resolving the "gateway dispute" of whether the claims are "arbitrable." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002); Peabody Holding Co., LLC v. United Mine Workers of America, International Union, 665 F.3d 96, 104 (4th Cir. 2012). Here, the parties do not dispute that the court is the proper forum to determine whether the dispute is arbitrable, nor do the relevant agreements contain "clear and unmistakable" language requiring that an arbiter make this determination. Peabody, 665 F.3d at 102-03. Thus, the court must determine whether the dispute is arbitrable.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, establishes "a liberal federal policy favoring arbitration" agreements. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983).[3] "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial

---

[3] Though Attachment A provides that disputes under the MSA are governed by the laws of California (Doc. 29-1 at 5), the FAA preempts conflicting state law. See Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468, 477 (1989).

proceedings, and compel arbitration . . . ." Murray v. United Food & Commercial Workers International Union, 289 F.3d 297, 301 (4th Cir. 2002) (citations omitted); 9 U.S.C. §§ 3-4. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." American Bankers Insurance Group v. Long, 453 F.3d 623, 626-27 (4th Cir. 2006) (citation omitted). As such, the court must determine whether parties have a valid and enforceable agreement to arbitrate. Berkeley County School District v. Hub International Limited, 944 F.3d 225, 234 (4th Cir. 2019).

The party seeking to compel arbitration must establish an agreement to arbitrate. See In re Mercury Construction Corp., 656 F.2d 933, 939 (4th Cir. 1981), aff'd sub nom. Moses, 460 U.S. 1; see Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (requiring litigant seeking to compel arbitration to demonstrate "a written agreement that includes an arbitration provision which purports to cover the dispute"). A court may order arbitration of a dispute only where it is satisfied that the parties entered into an agreement to arbitrate it. Granite Rock Co. v. International Brotherhood of Teamsters, 130 S. Ct. 2847, 2855-56 (2010) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). The party seeking to compel arbitration must demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration

6

provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." American General Life & Accident Insurance Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (quoting Adkins, 303 F.3d at 500-01). In this case, Plaintiffs challenge only the presence of the second element, arguing that the parties never entered into a written agreement to arbitrate any dispute over the MSA. (Doc. 34.)

"Arbitration is 'a matter of consent, not coercion,' and federal arbitration policy does not alter that maxim." Raymond James Financial Services, Inc. v. Cary, 709 F.3d 382, 385 (4th Cir. 2013) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 479 (1989)). The Fourth Circuit has recognized that "the 'touchstones of arbitrability analysis' are the 'twin pillars' of the parties' 'consent and intent' to arbitrate." Id. at 385-86 (quoting Peabody, 665 F.3d at 103). While the court must resolve any ambiguity regarding the scope of the arbitral issues in favor of arbitration, Moses, 460 U.S. at 24-25; Wachovia Bank National Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006), the question of the parties' intent does not enjoy any presumption favoring arbitration, First Options of Chicago, Inc. v. Kaplan, 514 U.S 938, 944 (1995).
7

To determine whether the parties agreed to arbitrate a particular dispute, the court must consider relevant state law principles governing contract formation. Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005); see Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). This inquiry is not confined to defects in contract formation, but also includes "such grounds as exist at law or in equity for the revocation of any contract." Hooters of America, Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999) (citation omitted). In a case premised upon diversity jurisdiction, a federal court applies the law of the forum state. Arthur Anderson LLP v. Carlisle, 556 U.S. 624, 630–31 (2009); see also Cara's Notions v. Hallmark Cards, Inc., 140 F.3d 566, 569 (4th Cir. 1998). Here, the parties agree that North Carolina law applies to the question of contract formation. (See Doc. 30 at 5; Doc. 34 at 6.)

In determining if an agreement to arbitrate exists, North Carolina law instructs "the court to examine the language of the contract itself for indications of the parties' intent . . . ." State v. Philip Morris, USA, Inc., 618 S.E.2d 219, 225 (N.C. 2005). The parties' intent is determined in light of the "contract as a whole." Id. "Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution." Lane v. Scarborough, 200 S.E.2d 622, 624 (N.C. 1973). When construing contractual

8

terms, a contract's plain language controls.  See DeLoach v. Lorillard Tobacco Co., 391 F.3d 551, 558 (4th Cir. 2004) (noting that "as under general principles of contract law, our task is to 'give ordinary words their ordinary meanings.'" (quoting Internet East, Inc. v. Duro Communications, Inc., 553 S.E.2d 84, 87 (N.C. Ct. App. 2001)); Walton v. City of Raleigh, 467 S.E.2d 410, 411 (N.C. 1996) ("If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract.").

The standard for deciding a motion to compel arbitration is similar to that applied to a motion for summary judgment. Berkeley, 944 F.3d at 234; Adams v. Citicorp Credit Services, Inc., 93 F. Supp. 3d 441, 445 (M.D.N.C. 2015). A party seeking to compel arbitration bears the initial burden of demonstrating the absence of any genuine dispute of material fact as to the parties' agreement to arbitrate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Dillon v. BMO Harris Bank, N.A., 787 F.3d 707, 713 (4th Cir. 2015). Once the moving party has met its burden, the nonmoving party must affirmatively demonstrate with specific evidence that there is a genuine dispute of material fact requiring trial. Matsushita Electric Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986); see Drews Distributing, Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 352 n.3 (4th Cir. 2001). In determining whether arbitration should be compelled, the court

9

is entitled to consider materials beyond the complaint and its supporting documents.  Berkeley, 944 F.3d at 234.  If there are unresolved questions of material fact that prevent the court from deciding the arbitrability issue, the court shall hold "an expeditious and summary hearing."  Moses H. Cone, 460 U.S. at 22; 9 U.S.C. § 4.

    **B.    Motion to Compel Arbitration**

The Allergan Defendants argue that Plaintiffs' dispute arising under the MSA must be arbitrated and that the court should therefore stay this lawsuit pursuant to the FAA, pending the resolution of arbitration.  (Doc. 30.)  In response, Plaintiffs contend the Allergan Defendants "have failed to submit competent, admissible evidence in support of the agreement to arbitrate" (Doc. 34 at 5) and that, as an electronic document, the attachments to the MSA do not satisfy North Carolina's statute of frauds (id. at 5-11 (citing the North Carolina Uniform Electronic Transactions Act, N.C. Gen. Stat. Article § 66-311 et. seq.)).  Plaintiffs further contend that their claims against the Allergan Defendants must proceed because the arbitration clause is not incorporated into the signed MSA Sales Order, as there is a lack of mutual assent.  (Id. at 11-14.)  The question, therefore, is whether there is an absence of any genuine dispute that the parties agreed to the arbitration clause contained in the MSA attachments.

In support of its position that there is a written arbitration

10

agreement, the Allergan Defendants proffer three pieces of evidence: an unsigned copy of the MSA with attachments (Doc. 29-1); the June 19, 2016 email from Lev to Sinclair and Ballard, with the MSA attachments that include the arbitration provision (Doc. 29-2); and the June 22, 2016 signed single-page MSA Sales Order, which includes the statement that "the attachments (A-C) hereto which are incorporated herein in their entirety by this reference" (Doc. 29-3).

In response, Plaintiffs argue that they did not enter into the terms and conditions contained in the MSA attachments, and thus the arbitration provision, because "Lev never presented Plaintiffs with a paper copy of [the MSA attachments] in the document he presented for signature, nor did he ever mention it." (Doc. 34 at 12-13 (referring to the full MSA contained in the June 19, 2016 email as "the MSA.pdf file").) Plaintiffs also contend that the record "is bereft of evidence that Plaintiffs knew about and intended to agree to the terms in the [MSA attachments]" as the Allergan Defendants have failed to lay a foundation for their proffered evidence. (Id.) Consequently, Plaintiffs argue, the Allergan Defendants have failed to present evidence that the parties entered into the MSA beyond the single-page MSA Sales Order, and thus did not enter into the agreement to arbitrate contained within Attachment A of the MSA attachments. (Id. at 13-14.)

11

Additionally, Plaintiffs maintain that, particularly in light of the declarations of Sinclair and Ballard, the Allergan Defendants have failed to meet their burden to demonstrate Plaintiffs' consent to the arbitration clause. (See Docs. 34-1, 34-2.) In her declaration, Sinclair states that Lev only presented her with the single-page MSA Sales Order at the in-person meeting on June 22, 2016. (Doc. 34-1 ¶¶ 12-15.) She states that she did not see the MSA attachments until the pendency of this litigation and that she did not intend to agree to them. (Id. ¶¶ 16-17.) Further, in Ballard's declaration, she also states that Lev only presented her with the single-page MSA Sales Order at the in-person meeting on June 22, 2016. (Doc. 34-2 ¶¶ 11-13.) She states that she was unaware of, and thus did not intend to agree to, the terms of the MSA attachments, and that she has "never seen" them. (Id. ¶¶ 14-15.)

In reply, the Allergan Defendants argue that because their emails and attachments are "relevant, credible, and highly probative, they are admissible for purposes of deciding this motion." (Doc. 37 at 3-5 (citing Fed. R. Evid. 402).) They contend that the terms of the MSA attachments, including the arbitration clause, "were explicitly incorporated by reference into the MSA Sales Order." (Id. at 8.) They further argue that Plaintiffs' "failure to read the full terms of the MSA before signing does not negate Plaintiffs' assent to the arbitration

12

provision." (Id. at 9-10; see also id. at 10 n.5 (arguing that Plaintiffs' declarations "do not establish lack of mutual assent simply because Plaintiffs failed to read their emails")).

On the present record, Plaintiffs are correct that the Allergan Defendants have failed to produce admissible evidence that there was an arbitration agreement. "The initial burden on a proponent of an arbitration agreement is not high. But [Federal] Rule [of Evidence] 901 does require that the proponent submit 'a satisfactory foundation' from which a jury could 'reasonably find that the evidence is authentic.'" Dillon v. BMO Harris Bank, N.A., 173 F. Supp. 3d 258, 269 (M.D.N.C. 2016) (quoting United States v. Hassan, 742 F.3d 104, 133 (4th Cir. 2014)). Defendants have not submitted a declaration, or other proper basis, to authenticate their proffered documents. See Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Rather, they simply rely on their statements in their briefing. Accordingly, the court cannot determine whether the items on which the Allergan Defendants rely are "what the proponent claims [they] [are]." Id. Thus, the Allergan Defendants have not met their burden to proffer credible, admissible evidence of an arbitration agreement.

Even were the court to consider the Allergan Defendants' evidence, Plaintiffs have "unequivocally den[ied] that there was

13

an arbitration agreement and produce[d] evidence to substantiate the denial." Dillon, 173 F. Supp. 3d at 269 (citing Drews Distributing, 245 F.3d at 352 n.3). Indeed, Sinclair and Ballard both state under oath that Lev presented them with only the single-page MSA Sales Order at their in-person meeting on June 22, 2016, and that they were unaware of, and thus did not intend to agree to, the terms of the MSA attachments. (Doc. 34-1 ¶¶ 12-17; Doc. 34-2 ¶¶ 11-15.) While the Allergan Defendants present a copy of Lev's June 19, 2016 email (with the MSA attachments) to Sinclair and Ballard (Doc. 29-2), there is no evidence that Sinclair or Ballard received, read, or were even aware of this email or its contents. Under North Carolina law, the MSA Sales Order's incorporation by reference of the MSA attachments is insufficient to establish that Plaintiffs agreed to arbitrate — especially where there is doubt that the Plaintiffs ever saw or were aware of the MSA attachments. See Sciolino v. TD Waterhouse Investor Services, Inc., 562 S.E.2d 64, 65-67 (N.C. Ct. App. 2002) (finding no evidence of mutual assent to arbitrate where plaintiffs signed an application in which they indicated that they "read, understand, and agree to be bound by the terms of the attached Customer Agreement" enclosed, but there was no customer agreement attached to the application, plaintiffs denied a customer agreement was provided, and the customer agreements presented by defendants at trial did not bear any indication that plaintiffs had ever seen

14

the document); Evangelistic Outreach Center v. General Steel Corp., 640 S.E.2d 840, 843-45 (N.C. Ct. App. 2007) (affirming trial court's denial of a motion to compel arbitration and finding that defendant had not carried its burden of showing that an agreement's second page, which contained an arbitration provision, had been faxed to or received by the plaintiff, who claimed he received and signed only the first page, despite the inclusion of a notation on the first page that the agreement was subject to "terms and conditions on the face and reverse hereof"); Kennedy v. Branch Banking & Trust Co., 600 S.E.2d 520 (N.C. Ct. App. 2004) (same, where plaintiff executed a "signature card" incorporating by reference an agreement to arbitrate but denied receiving a copy of the agreement to arbitrate until after the commencement of his lawsuit); see also Dillon, 173 F. Supp. 3d at 266-67, 267 n.6 (collecting cases).

For these reasons, the Allergan Defendants have failed to establish the absence of a genuine dispute that Sinclair and Mystic agreed to be bound by the arbitration provision. Their motion to stay proceedings and compel arbitration will accordingly be denied without prejudice.

### C.  Motion to Amend Answer

The Allergan Defendants also move for leave to file an amended answer. (Doc. 28.) The amendment merely seeks to correct the corporate status of Defendant Zeltiq from an LLC to a corporation

15

and to amend the third affirmative defense to clarify that reliance on the terms of the MSA "includ[es] the arbitration provision." (Doc. 28-1 at 8.)

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." While district courts have discretion to grant or deny a motion to amend, the Fourth Circuit has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (holding leave should be "freely given" absent "any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

The Allergan Defendants filed their motion for leave to file an amended answer on January 3, 2022. (Doc. 28.) Plaintiffs do not claim, nor is there evidence in the record, that the Allergan Defendants seek leave to amend their answer in bad faith. Therefore, the motion should be granted unless it presents unfair

16

prejudice to Plaintiffs or if amendment would be futile.  "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing."  Laber, 438 F.3d at 427.  An amendment is not prejudicial if "it merely adds an additional theory of recovery to the facts already pled."  Id.; see also Hatteras/Cabo Yachts, LLC v. M/Y EPIC, 2020 WL 1668045, at *3 (E.D.N.C. 2020) (holding that undue prejudice justifies denying a motion to amend "if the amendment would require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, or would significantly delay the resolution of the dispute" (citation omitted)).  "It is settled that 'if the proposed change . . . advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.'"  Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 225 (8th Cir. 1994) (citing Charles A. Wright & Arthur Miller, Federal Practice & Procedure: Civil, § 1487, at 637 (1991)); see Joyner v. Abbott Labs, 674 F. Supp. 185, 190 (E.D.N.C. 1987) ("When a proposed amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the motion to amend should be denied.").

Neither party claims any additional discovery is needed to address the Allergan Defendants' proposed amended answer including an arbitration defense.  Cf. Laber 438 F.3d at 427.  In short, there is no indication that granting the Allergan Defendants'

17

motion for leave to file an amended answer would cause delay, and, even if it would, "[d]elay alone, however, is an insufficient reason to deny . . . a motion to amend." Id. Additionally, even though the court has found that the Allergan Defendants have failed to establish that Plaintiffs agreed to arbitration when they signed the single-page MSA Sales Order, their amendment pleading an arbitration defense would not be futile as Defendants may "cure the evidentiary deficiencies" presently before the court and move to compel arbitration again after having done so unsuccessfully. See BMO Harris Bank, 787 F.3d at 715-16 (explaining that "no authority — not the FAA, the Federal Rules of Civil Procedure, or any other source of law of which we are aware — limits a party to only one motion under §§ 3 or 4 of the FAA"); see also Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) (holding that "[l]eave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face"). Thus, the Allergan Defendants' motion to file an amended answer will be granted.

### III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the Allergan Defendants' motion stay proceedings and compel arbitration (Doc. 29) is DENIED without prejudice.

IT IS FURTHER ORDERED that the Allergan Defendants' motion

for leave to file an amended answer (Doc. 28) is GRANTED, and Defendants are DIRECTED to file their amended answer forthwith.

/s/ Thomas D. Schroeder
United States District Judge

August 3, 2022